[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10772
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 11, 2011
JOHN LEY
CLERK

D. C. Docket No. 1:09-cv-03527-RWS

STATE NATIONAL INSURANCE COMPANY,

Plaintiff-Counter
Defendant-Appellee,

versus

NCO FINANCIAL SYSTEMS, INC.,
TOTAL DEBT MANAGEMENT, INC.,

Defendants- Counter
Claimants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 11, 2011)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Appellants NCO Financial Systems, Inc. (NCO) and Total Debt Management, Inc., appeal the district court's grant of State National Insurance Company's (State National) motion to enforce a settlement agreement. Appellants assert the agreement entered into after the parties' April 8, 2010, mediation was not full and complete and cannot be enforced as a binding settlement agreement because it was subject to future negotiations on multiple material issues. Appellants further contend that even if the agreement is considered a binding settlement agreement, the revocation period contained therein was properly extended and NCO timely revoked its consent. After review, we affirm the district court's enforcement of the settlement agreement.

## I.  BACKGROUND

State National issued a professional liability policy to the law firm of Trauner Cohen and Thomas (TCT) for the policy period of December 7, 2007 through December 7, 2008, and renewed the policy for the term of December 7, 2008 through December 7, 2009. TCT was a debt collection law firm located in Atlanta. During the relevant State National policy periods, NCO retained TCT to undertake the collection of its delinquent accounts.

In July 2009, NCO filed a lawsuit against TCT alleging that TCT breached the terms of the parties' agreement by reporting that lawsuits were filed that were

not, seeking reimbursements for costs not incurred by TCT, and failing to timely and accurately remit funds owed to NCO. A number of other unrelated entities asserted similar claims against TCT.

More than five months after NCO commenced its negligence action against TCT, State National filed this action, seeking a declaration and interpretation of several alleged coverage limitations and policy terms of its Lawyers Professional Liability Insurance Policy issued to TCT. In addition to suing TCT, State National also sued a number of TCT's clients who had asserted claims for damages resulting from the alleged negligence of TCT.

Mediation with all parties took place on April 8, 2010. At the conclusion of the mediation session, an agreement, described as a "term sheet," was prepared and signed by the parties' respective counsel and representatives. The final paragraph of the agreement allowed any of the parties to revoke the agreement on or before April 13, 2010.

On April 12, 2010, NCO's counsel sent an email to all parties requesting a one-week extension of the revocation period through April 20, 2010. On April 19, 2010, NCO's counsel once again requested from all parties another one-week extension of the revocation period through April 27, 2010. No party objected to either of these requests. NCO did not seek an extension beyond April 27, 2010.

On May 18, State National's counsel imposed a deadline on "the deal," stating "[i]f we do not hear from the parties by Friday afternoon [May 21, 2010] with an acceptance, we will alert the Court of the failed mediation and request a preliminary hearing." On June 8, 2010, State National's counsel sent all parties the following email:

> Everyone: After 2 months of discussion, I am told that a certain party cannot make up its mind regarding the settlement agreement. Because of the extended delay, my client has informed me that we either agree to settle tomorrow by 3:00 PM EST or the deal is off. I am sorry for the deadline but the time for further discussions have ended. No further extensions will be considered.

On June 9, 2010, NCO informed State National that it was rejecting the April 8, 2010, agreement. As a result, TCT filed a Motion to Enforce Settlement, which was later joined by State National.

After briefing and oral argument on the issue, the district court found that the parties entered into a "certain, definite and unambiguous" settlement agreement on April 8, 2010. In light of the evidence that NCO failed to obtain consent from all the parties to extend the revocation period beyond April 27, 2010, the district court held that NCO's June 9, 2010, revocation was untimely and of no effect. Accordingly, the district court enforced the April 8, 2010, agreement.

4

## II.  DISCUSSION

NCO asserts the district court erred in concluding a settlement agreement existed because negotiations continued after the mediation concluded.  NCO asserts the agreement contained conditional language in several paragraphs on material issues and did not address other issues, showing that the agreement was not a final one.  Further, NCO contends that State National's actions show that it also did not believe a settlement had been reached.

"We review a district court's factual findings for clear error and its conclusions of law *de novo*."  *Christo v. Padgett*, 223 F.3d 1324, 1336 (11th Cir. 2000).  This Court reviews a district court's decision whether to enforce a settlement agreement for an abuse of discretion.  *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999).

We use the applicable state's contract law to construe and enforce settlement agreements.  *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985).  Both parties agree that Georgia law governs.

> Under Georgia law, an agreement in settlement of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract.  Thus, there must be a meeting of the minds between the parties as to the terms of the contract.  Assent to the terms of the agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent

> upon which the other party can rely. An attorney's consent to the agreement is binding on his client.

*Id.* (internal citations omitted). "[T]he law also favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced . . . unless it appears that the parties clearly failed to reach agreement on an essential contract term." *Greenwald v. Kersh*, 621 S.E.2d 465, 467 (Ga. Ct. App. 2005) (quotations omitted).

We agree with the district court's conclusion that the agreement, filed under seal, is definite, certain, and unambiguous. NCO does not deny signing the agreement or dispute the specific terms set forth in the agreement. Instead, NCO contends certain paragraphs in the agreement left unresolved (1) the issue of State National providing it with certain information from third parties, (2) NCO withdrawing bar complaints upon final settlement, and (3) a formal settlement agreement being prepared and signed by all parties. As to the first issue, record evidence supports that State National provided the documents as requested. The second unresolved issue was to be done after the settlement was over, not before. Lastly, the fact that a later drafting of a formal settlement agreement "may have been a condition of the performance," does not make it "an act necessary" for the parties to reach an agreement to settle. *See Pourreza v. Teel Appraisals &*

*Advisory, Inc.*, 616 S.E.2d 108, 111 (Ga. Ct. App. 2005). Further, NCO's arguments regarding oral communications at the mediation are parol evidence and thus not admissible to add to an unambiguous contract. *See* O.C.G.A. § 13-2-2; *Triple Eagle Assoc., Inc. v. PBK, Inc.*, 704 S.E.2d 189, 195-96 (Ga. Ct. App. 2010) ("[W]here the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent . . . ."). Thus, we conclude the agreement reached after mediation was a binding settlement agreement under Georgia law.

NCO's further argues that even if we conclude the agreement was a settlement, it timely revoked that settlement. This argument is without merit. It is undisputed that NCO requested from all parties to the agreement an additional week to revoke it. It is also undisputed that NCO made a second request to all parties for an additional week extension. While NCO and State National continued to negotiate after the second extended deadline, there is no evidence that the other parties consented to any further extension of the revocation deadline. Without the consent of all parties to an additional extension, no such extension could have been granted to NCO. *See Spiegel v. Hays*, 119 S.E.2d 123, 128 (Ga. Ct. App. 1961) ("A contract depends upon the mutual consent of all of the parties thereto, and the provisions of a written agreement cannot be changed by the

consent of less than all of them."). Thus, NCO's attempted revocation of the agreement on June 9, 2010, was untimely. The agreement was not revoked and is enforceable.[1]

Thus, we affirm the district court's grant of State National's motion to enforce the settlement agreement.

**AFFIRMED.**

---

[1] We further reject NCO's arguments that (1) the other parties to the settlement ratified an extension of the revocation period by their silence, and that (2) the settlement was modified by the parties' course of conduct and dealing. First, there is no evidence that State National was a "principal" to the other parties that had the authority to ratify the contract's original terms for the other parties. *See* O.C.G.A. § 10-6-52 ("A ratification may be express or implied from the acts or silence of the principal."). Second, we conclude the other parties' silence from April 27 to June 9 was not a course of conduct sufficient to modify the settlement.